```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA      *    Case No. 20-CR-442(EK)
                              *
                              *    Brooklyn, New York
                              *    August 15, 2022
      v.                      *
                              *
BAIMADAJIE ANGWANG,           *
                              *
              Defendant.      *
                              *
   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *


        TRANSCRIPT OF CRIMINAL CAUSE FOR TELEPHONE CONFERENCE
             BEFORE THE HONORABLE ERIC R. KOMITEE
                UNITED STATES DISTRICT JUDGE

    APPEARANCES:

    For the Government:          MATTHEW HAGGANS, ESQ.
                                 FRANCISCO NAVARRO, ESQ.
                                 MEREDITH ARFA, ESQ.
                                 SCOTT CLAFFEE, ESQ.
                                 Asst. United States Attorney
                                 United States Attorney's Office
                                 271 Cadman Plaza
                                 Brooklyn, NY 11201


    For the Defendant:           JOHN F. CARMAN, ESQ.
                                 John Carman, Esq.
                                 666 Old Country Road
                                 Garden City, NY  11530




    Proceedings recorded by electronic sound recording,
    transcript produced by transcription service.
```

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

1          (Proceedings commenced)

2                THE CLERK:  This is criminal cause for a telephone

3    conference, Docket No. 20-CR-442, USA v. Baimadajie Angwang.

4                Before asking the parties to state their

5    appearance, I would like to note the following.  Persons

6    granted remote access to proceedings are reminded against the

7    general prohibition against photographing, recording, and

8    rebroadcasting the court proceedings.

9                Violation of these prohibitions may result in

10   sanctions, including removal of court issued media

11   credentials, restricted entry to future hearings, denial of

12   entry to future hearings, or any other sanctions deemed

13   necessary by the Court.

14               Would the parties please state their appearance,

15   government first.

16               MR. HAGGANS:  Good afternoon.  For the United

17   States it's Matthew Haggans, Francisco Navarro, Meredith

18   Arfa, and Scott Calffee appearing by telephone.

19               THE COURT:  Good afternoon.

20               MR. CARMAN:  Good afternoon.  Good afternoon, Your

21   Honor, it's John Carman with the defendant, Angwang.

22               THE COURT:  All right.  Good afternoon, Mr. Carman,

23   to you as well.

24               And (indiscernible), I apologize for referring to

25   you as Aaron.  My law clerk was going to be calling the case,

3

1      but we are happy and grateful to have you with us.

2                THE CLERK:  You're welcome.

3                THE COURT:  I called this case, obviously on very

4      short notice for conference today because in putting together

5      the unclassified CIPA Section 4 opinion that we issued on

6      Friday, we mapped out essentially what we think the schedule

7      would have to look like from here to trial in order for the

8      currently scheduled trial date, which is September 12th, for

9      jury selection to hold.

10               And as you can see from the final paragraphs in

11     that order, it's a highly accelerated time table.  And I

12     don't know, and I'm not sure whether the parties yet are even

13     in a position to know how much additional related process we

14     will need between now and jury selection.

15               But the statute provides for substantial additional

16     process in the event that the defense wants to use some or

17     all of the substituted material that is in the process of

18     being turned over to them now, pursuant until the order that

19     I just issued.

20               And, you know, the bottom line at this stage is

21     that if either party believes, or comes to believe that the

22     schedule is not realistic, either party (indiscernible) the

23     defense, (indiscernible) the fact that the defense will have

24     had this evidence for substantially less time than the

25     government has, it seems to me to be in everybody's interest

4

1    to surface that view as quickly as possible.

2              It will help me manage my calendar where we've got

3    a bunch of, in some cases, overlapping in September, but more

4    importantly will give visibility to the parties with respect

5    to the time line on which they're working to prepare for

6    trial.

7              So with that why don't I just ask the government in

8    the first instance, to just give an update on what you see as

9    the schedule from here in terms of turning over the material

10   that we've had (indiscernible) in the orders, and then I can

11   turn the floor over to the defense to talk about whether the

12   current schedule seems realistic to them now, seems

13   unrealistic as of now, or whether it's simply not yet

14   possible for the defense to know that.

15             So, Mr. Carman, why don't we start with you, or

16   your side?

17             MR. CARMAN:  Your Honor, I think that in the letter

18   that was submitted by the government --

19             THE COURT:  Oh, sorry.

20             MR. CARMAN:  I'm sorry?

21             THE COURT:  Yeah.  I meant to say Mr. Claffee.

22             MR. CARMAN:  Oh, I thought you said -- okay, never

23   mind.

24             THE COURT:  I did say Carman, but I meant -- I

25   meant to just ask the government first.

1          MR. CARMAN:  Certainly, Your Honor.

2          THE COURT:  Because (indiscernible) some -- some

3    additional information from the government's side about when

4    the CISO officer is available to make some of these

5    productions and related items.

6          MR. HAGGANS:  Yes, I -- this is Matthew Haggans

7    speaking for the government, Your Honor, and I can give the

8    Court an update.

9          And I'll just note, Mr. Carman, I believe is aware

10   of everything I'm about to say.

11         So we've filed two update letters.  The second one

12   was on Friday night and PACER was down, so we didn't docket

13   it until this morning.

14         But I'll cut to the last paragraph, which is, we've

15   arranged for the CISO to collect the material first thing

16   Wednesday morning.  It's my understanding he has scheduled a

17   time with Mr. Carman, also Wednesday morning, so that he can

18   make the material available to counsel.

19         It's also my understanding that the CISO has

20   completed all of the shall we say necessary steps so that Mr.

21   Carman can actually have them without too much further delay

22   once the two of them are able to meet.

23         So from the Government's perspective, that aspect

24   of the Court's directive from its order in the CIPA 4 will be

25   completed on Wednesday.

6

1           From that point forward, if the defense chooses to

2     make use of the CIPA 5 process, you know, the government

3     doesn't have a prediction, of course, at this time, as to

4     whether the defense is going to pursue that.

5           THE COURT:  Okay.  All right.  So, Mr. Carman,

6     you're on mute at this point.

7           MR. CARMAN:  Yeah, I was -- I was on mute, but you

8     were -- you were breaking up.  I really didn't hear what you

9     said, so I'm sure you're looking for my position on this.

10          THE COURT:  Yeah, on your position with respect to

11    the schedule and whether you think the trial date is likely

12    to hold at this point, unlikely to hold, whether you think it

13    makes sense to keep the pre-trial conference we have on the

14    calendar Friday on the calendar, or to move it and any other

15    observation you may (indiscernible).

16          MR. CARMAN:  Your Honor, I'm in substantially the

17    same position I've been in throughout the entire process.  I

18    think that that status is about to change on Wednesday, but

19    until I have an opportunity to meet with the CISO and to

20    review the material, I don't feel like I'm in a position to

21    make any prediction, you know, as to the trial schedule,

22    whether you know, my review will necessitate a delay, whether

23    it's short or long.  I just -- I don't think I'll know until

24    Wednesday.

25          So it makes sense to me to keep the conference on

7

1    Friday, or even have another one on Thursday if you want.

2         You know, I should have a better sense of whether I need

3    some additional time, or whether I don't, having had a chance

4    to review it, but you know I'm -- I just -- I don't have any

5    sense of what I'm about to see.

6              THE COURT:  Right.  So I think I can say, without

7    risking any classification issues, that the material that's

8    coming your way is not tremendously voluminous, I don't

9    think.

10        And so, I don't expect it will take you a ton of

11   time to review and digest it, but I also don't think I'm

12   revealing anything beyond the scope of my unclassified

13   (indiscernible) say that, you know, if there are substituted

14   materials coming your way, it's the case under the statute.

15        Those are coming your way because there were

16   indications that the material was helpful -- material were

17   helpful to the defense, and so I would expect -- and you

18   know, the government will just stop me if I'm getting ahead

19   of myself here, but I would expect that, you know, material

20   that is helpful to the defense, material almost by definition

21   that the defense will want to use, and if that will require

22   additional CIPA 5 -- the CIPA Section 5 process then, you

23   know, maybe the government has a view at this point on

24   whether (indiscernible) assuming there's a CIPA Section 5

25   process to come, whether that's realistic on the current time

8

1     table or not realistic.

2              MR. HAGGANS:  Your Honor, it's Matthew Haggans

3     again.

4              It's difficult  for the government to sort of

5     evaluate the defense's view. And I think we would have to do

6     that in order to come to some informed view as to whether the

7     current schedule is achievable.

8              You know, off the cuff, I believe I tend to agree

9     with Mr. Carman that we have a -- we have a conference on the

10    blocks already for this coming Friday, and certainly by then

11    the defense will have had the opportunity to evaluate the

12    material and I expect come to at least a preliminary view, if

13    not a considered view, of what, if anything, they intend to

14    do.

15             I would just note, at that -- at that conference,

16    it's currently scheduled as a, you know, a regular in-person

17    court proceeding without any, you know, classified component.

18    Not necessarily that we would need it to address the

19    schedule, but I'm just noting that for the record.

20             THE COURT:  Yeah.  But answer the hypothetical for

21    me if you can, Mr. Haggans.  If you assume that the response

22    from the defense is either of the following, either having

23    seen the material that's in the process of being delivered to

24    them, yet it is the defense's intention to use some of that

25    material at trial, or even a more modified version of that

1    response along the lines of we can't, as the defense, rule

2    out now the likelihood that we will want to use this material

3    at trial, especially given the difficulties that defense

4    counsel will have in the meantime at least, conversing with

5    his own client about this stuff.

6              If those are the responses, or one or both of those

7    are the responses, what happens next from the government's

8    perspective and on what rough time table would the government

9    anticipate that happening?

10             MR. HAGGANS:  So in either scenario, Your Honor,

11   the defense counsel would be preparing whatever it is they

12   might be seeking to file.

13             It's our understanding that they would need to do

14   that with the assistance of the CISO in the -- you know, the

15   appropriate space within the courthouse.  Obviously, he could

16   not be preparing it from home, or you know, on his laptop or

17   anything like that, without -- without knowing --

18             THE COURT:  Why?  Why (indiscernible) prepare a

19   one-sentence letter that says, we can use everything that's

20   just been turned over to us, full stop?  That letter would

21   not be classified.

22             MR. HAGGANS:  I agree, Your Honor.  A cover letter

23   providing notice of the motion would not be classified, but

24   in my limited experience at the CIPA 5 and CIPA 6 stages,

25   they will typically try to articulate what it is that they're

1    -- what it is is their theory, and I think in this scenario,

2    that would need to happen in the -- in the classified

3    setting.

4            THE COURT:  Why -- just elucidate the reason for

5    that a little bit.  Like, why (indiscernible) say something

6    about their theory?

7            I mean, you -- you know, as appears in the

8    unclassified order, the only reason we're getting to get

9    where we're at now is because, you know, there's been some

10   realization that at least some of the material that we had to

11   run through the CIPA Section 4 process is helpful and

12   material.

13           And so, if everybody agrees with it, why do they

14   need -- like, what is the CIPA 5 -- Section 5 motion in this

15   case look like, as best you can anticipate?

16           MR. HAGGANS:  It requires a particularized

17   statement that sets out with specificity the classified

18   information that counsel reasonably believes is necessary,

19   and --

20           THE COURT:  All right.

21           MR. HAGGANS:  -- under the text of the statute,

22   Section 5A, that notice shall include a brief description of

23   the classified information.

24           I can't envision in the -- in any case in general,

25   and certainly in the circumstance of this case in particular,

1    Your Honor, how the defense could complete that submission

2    without providing a filing that is in a sealed and classified

3    setting, and I would note in the cases in which I -- that I

4    have litigated that have involved filings under Section 5,

5    they occur in the sealed and classified setting as a matter

6    of course.

7              THE COURT:  Okay.  All right.

8              So that's helpful, and I guess for purposes of this

9    conversation, we should all be assuming that the defense will

10   need to prepare a CIPA Section 5 motion, and that that will

11   be somewhat logistically complex in that Mr. Carman will need

12   to be working with the classified information security

13   officer to, you know, have access to a secure laptop, or

14   whatever it's going to be in the courthouse, so that he can

15   work with classified material accordingly.

16             But assume that that's going to happen, and assume

17   that in substance, the classified file you get says we want

18   to use either a lot of or all of the material that we

19   received through the Section 4, what happens next?

20             MR. HAGGANS:  We would then -- this is the

21   government, Your Honor -- would then be preparing our

22   opposition, or response under Section 6 in which we'd be -- I

23   don't want to predict the future, because I don't know what

24   the defense might be articulating, but we would then be

25   seeking a hearing to address that information.

1        THE COURT:  Okay.  And the remedy, or other relief

2   that you're seeking at that hearing consists of what?  An

3   application to preclude the defense from using that

4   information?  An application to seal the courtroom?

5        MR. HAGGANS:  I will (indiscernible).

6        THE COURT:  What can you tell me at this stage?

7        MR. HAGGANS:  So with -- I would prefer not to get

8   into specifics in that that might communicate something about

9   the underlying information, Your Honor, but the Court is

10   correct.

11        One possible request the government could make

12   would be to essentially deny the defendant the authorization

13   to use that material.

14        THE COURT:  Okay.  But all this -- so today is

15   August 15th, and jury selection is set for September 12th,

16   and I could be missing something.

17        I could be missing something glaring when I tell

18   you what my working assumptions are as to where we stand now,

19   but it just seems to me logical to say that if there's

20   material -- if, you know, documents or other evidence as to

21   which the Court and the government are agreed, you know, that

22   needs to be regarded for (indiscernible) the defense, then

23   almost by definition, one would expect the defense to say,

24   look, we (indiscernible) use this material.

25        And so, whatever happens next in this

1    (indiscernible) process, I question (indiscernible) happen

2    realistically.

3           Is there any scenario from the government's

4    perspective in which the process that (indiscernible) can do

5    so, can be worked through effectively on the current time

6    line?  Again, we assume that the defense is going to say

7    something other than, oh no, I don't need any of it.

8           MR. HAGGANS:  The government believes the answer is

9    yes, it remains possible, Your Honor, insofar as -- and in

10   particular because the Court is already familiar with the

11   material.

12          This is not a case in which, for example, the -- as

13   happens in some cases, the defendant is a clear defense

14   contractor and is charged with sharing information

15   unauthorized and the defendant is seeking to use information

16   in their own head.

17          THE COURT:  Right.

18          MR. HAGGANS:  This is not that type of case.  The

19   Court is already familiar with the information, and so we

20   don't have that necessity for a spin up on a new topic from

21   the Court's perspective.

22          THE COURT:  Right.  Okay.  But -- yeah, there are

23   two -- there's two -- two big unknowns at this point, which

24   are one, what's the defense response going to be when they

25   (indiscernible) the material in question.  I think we can

14

1    guess with a high degree of confidence what that will be,

2    which is yes, we'd like to use at least some of this stuff,

3    or at least we can't rule out the possibility.

4              I think the bigger unknown at this point is, what

5    will the government's response to that indication be, and so

6    -- so the government makes a very good point that the answer

7    to that question can't really be provided this week with the

8    hearing scheduled the way it is.  Right?  Because -- because

9    we're going to be in open court on Friday, and so what?

10             Like, is there -- Thursday afternoon would be

11   better for me for a variety of reasons than Friday morning,

12   and I guess one question is -- and I'm glad we have Mr.

13   Rucker on the phone for this question, but I put it to the

14   government lawyers in the first instance.

15             Would it be possible to convert Friday's pre-trial

16   conference, which seems premature to me, into a discussion of

17   these Section 5 issues, and to do that in a secure and sealed

18   setting with both parties present, government and defense?

19             Mr. (indiscernible).

20             MR. HAGGANS:  Yeah, this is Matt Haggans speaking.

21             THE COURT:  Sound workable to you?

22             MR. HAGGANS:  This is Matt Haggans speaking, Your

23   Honor.  Subject to the CISO schedule and the Court's

24   schedule, government will of course make itself available for

25   such a conference.

1          I just note I -- the Court said the parties.  I

2    think it would be counsel, but based on the Court's existing

3    order --

4          THE COURT:  Yes.  Yes.

5          MR. HAGGANS:  -- the defendant would not be

6    present.

7          THE COURT:  Correct.  Thank you for the

8    clarification.  When I -- yeah, I spoke generally that way.

9    I just meant to say that both sides would be represented, but

10   I agree.  Then if we're going to be discussing classified

11   material. that the status quo right now would indicate that

12   lawyers and cleared court reporter only, and not the

13   defendant himself.

14         Mr. Carman, what do you think about that proposal?

15   You had (indiscernible) on Thursday in your earlier remarks.

16         MR. CARMAN:  I'm available Thursday afternoon, Your

17   Honor.

18         THE COURT:  Okay.  All right.  So let's -- let's do

19   that, then.

20         Let's plan to gather at, I'm going to say 3:00 this

21   Thursday, August 18th for the purposes we have talked about

22   here and, you know, if the government can go through that,

23   that mental exercise that I've kind of posited here today,

24   which is assume the defense comes back and says we intends to

25   put some or all of this material into evidence, or at least

1    we can't rule out that possibility, then we'll hear from the

2    government on the subject of where we go from there in their

3    view.

4              MR. HAGGANS:  Understood, Your Honor, and in that

5    type of setting it will be a little easier for the government

6    to respond with particularity than it is on this platform.

7    Thank you.

8              THE COURT:  Yeah.  Totally understand.  I

9    appreciate the (indiscernible) associated with having this

10   kind of conversation in this setting and the limits there.

11   At least we've -- I think we've set ourselves up to have that

12   conversation on Thursday in a, you know, in a more productive

13   manner than we can right now.

14             Okay.  Anything else, starting with the defense?

15   Anything else that we should be talking about today while

16   we're all together?

17             MR. CARMAN:  So, Your Honor, would you be expecting

18   my CIPA 5 notice of intent to use the CIPA Section 5 material

19   on Wednesday?

20             I think I can probably do that with the CISO, but

21   not, you know, not 100 percent sure, but it sounds like I can

22   -- I can probably put something together while I'm over

23   there, you know, a very basic submission, just giving

24   evidence of the defense's intent to use the material.

25   Obviously not going to be an elaborate motion of any kind.

1          THE COURT:  Yeah, that sounds right to me.

2          I think Mr. Haggans put his finger on the key

3    distinction between the -- either the Section 5 process in

4    this case and some other hypothetical cases.  It's not like,

5    we don't think, although you'll correct us on Thursday if

6    we're wrong, it's not like we're going to be hearing about

7    new evidence for the first time that nobody's seen on the

8    Government's side, and so, you know, maybe that makes your

9    (indiscernible) a little bit easier.

10          But at a minimum, Mr. Carman, if you would just be

11   in a position to tell us what your intent is, even if the

12   (indiscernible) you're ultimately (indiscernible) has not

13   been understandably completed by that point, that will I

14   think help us map out next steps.

15          And again, the government should anticipate, you

16   know -- think expansively about what the defense may be

17   asking for and speculate a potential response accordingly.

18          All right.  Mr. Haggans, anything else from

19   government's side?

20          MR. HAGGANS:  Two -- just two matters, Your Honor.

21   One, I take it for now, the conference previously set for

22   Friday remains set on Friday?

23          THE COURT:  You know, I -- when I schedule pre-

24   trial conferences I'm, you know, usually anticipating that

25   we'll be, you know, definitively resolving or maybe having

1     oral argument on -- or both, motions in limine, you know,

2     resolving other issues about the manner in which the trial,

3     logistically speaking, will actually unfold, and I think

4     that's probably premature at this point.

5             And so my inclination would be to do the Thursday

6     conference in lieu of, rather than in addition to Friday pre-

7     trial conference.  But if, Mr. Haggans, you or Mr. Carman

8     think otherwise, I would be interested to hear why.

9             MR. HAGGANS:  I suppose, Your Honor, following the

10    sort of bird in the hand being worth two in the bush

11    principle, considering we're going to see each other on

12    Thursday and have a more robust and collective view as to the

13    path forward, the government's recommendation would be to

14    keep the Friday appearance on the calendar, as it would be

15    very difficult to put it back on once everybody's time is

16    released.

17            THE COURT:  Yeah.  Okay.  That's fine with me.

18            MR. HAGGANS:  And if the Court has a different view

19    after Thursday's proceedings, then we can address it then.

20            THE COURT:  Exactly.

21            THE COURT:  I think --

22            MR. CARMAN:  The only --

23            THE COURT:  -- if Thursday is productive, it's

24    unlikely that we would also do Friday, but -- yeah, Mr.

25    Carman?

1          MR. CARMAN:  I was just going to throw into the

2    mix, Your Honor, we're considering whether to respond to the

3    government's motions in limine, and I think your rules give

4    me until Monday the 22nd to file in writing.  I don't think a

5    scheduling order superceded that, so I don't --

6          THE COURT:  Right.  No, I agree with that.

7          MR. CARMAN:  -- I don't (indiscernible) being able

8    to deal with that by the 19th.

9          THE COURT:  Yeah.  I mean, look let's, as Mr.

10   Haggans says, like anything could happen between now and

11   Thursday, inclusive.

12         I suppose it's possible that the matters we're

13   talking about on Thursday are so convoluted and complicated

14   that we just need Friday for a continuation of Thursday's

15   proceeding, and so I don't see much downside in just keeping

16   that on the calendar now, just to, you know, try to preserve

17   everybody's availability.

18         But I do think the overwhelming likelihood is that

19   on Thursday we'll release that Friday time slot.  But yeah,

20   for the moment, let's keep everything on the calendar.

21         MR. HAGGANS:  Understood, Your Honor.  It's Matt

22   Haggans again.

23         The other item as part of the Court's order last

24   Thursday evening, the Court directed the government to review

25   both its ex parte filings and the forthcoming -- to us, via

1    the CISO, copy of the Court's classified memorandum

2    accompanying its order for what I would refer to as a

3    declassification review.

4           The government would request a briefing calendar so

5    that we can move the Court to reconsider those aspects of its

6    order under the text of the CIPA Section 4 statute.

7           THE COURT:  All right.  Say what sections you're

8    asking for reconsideration on.

9           MR. HAGGANS:  Towards the end of the Court's order,

10   Your Honor, the Court directed the government to review its -

11   - the Government's ex parte filings in this matter to

12   generate redacted portions.

13          THE COURT:  At?

14          MR. HAGGANS:  This is at Pages 13 and 14.

15          THE COURT:  Yeah.  Yeah.

16          Well, I saw -- I did see in a bunch of Eastern

17   District, specifically opinions on similar subject matter the

18   judges said, look, I'm not going to direct that a redacted

19   version be filed, because that version would be redacted so

20   thoroughly that nothing useful would appear at the basis for

21   reconsideration.  They'd look to -- there would just be

22   nothing left.

23          MR. HAGGANS:  In sum and substance, that's correct,

24   Your Honor, but we -- but we are --

25          THE COURT:  Yeah.  I (indiscernible) --

1          MR. HAGGANS:  -- happy to brief the issue.

2          THE COURT:  Now, and I mean -- yes, you can -- you

3     can submit a fairly short letter brief.  I think the

4     reasoning does suggest itself at some level.

5          You know, my interest is just in -- in making this

6     public and see as much of what's happening here as the

7     statute and (indiscernible) security imperatives therein

8     allow, and you know -- and so at a minimum, the docket

9     should reflect at least that there was a filing on a given

10    date, maybe on a given subject.

11         But, you know, just think about -- think about

12    that from my perspective.  That like if the issue we're

13    solving for is, you know, what is the most that we can tell

14    the public or make apparent to the public about what

15    happened on a given date, even if it's just you know, one

16    sentence at an utterly high level generality, you know, that

17    will help.

18         I understand that it could be a very time

19    consuming and ultimately futile exercise for the government

20    to go through these briefs and redact everything that CIPA

21    would require.

22         MR. HAGGANS:  So, Your Honor, I would just note

23    for the Court's attention, it is our practice in any case

24    involving CIPA filings, and it's the practice we've followed

25    in this case, that we do docket a public notice that --

1          THE COURT:  Right.

2          MR. HAGGANS:  -- something under the statute has

3     been filed, we typically do that by filing a very brief

4     letter for purposes of the record and attaching what is

5     sometimes referred to as the half sheet or the cover sheet,

6     which is the top page of whatever substantive filing is

7     provided, stripped of any real classification markings or

8     otherwise sensitive information.

9          We have done that in this case, and I think Your

10    Honor is -- has accurately devined that the sum and

11    substance of our motion for reconsideration as it were,

12    would be that we are at the perimeter of what CIPA requires

13    us to ensure is placed on the public record.

14         THE COURT:  Yeah.  But I'm framing the question a

15    little bit differently, which is not what is the limit of

16    what CIPA requires, but also what is the limit of what you

17    can do.

18         You know, I mean, I have to go back and look at

19    each of these cover letters individually, but I'm asking a

20    question about whether they say as much as they can say, not

21    as much as CIPA requires, but as much as they can say

22    without implicating national security concerns or otherwise

23    contravening any CIPA imperatives such that, you know, a

24    court watcher could say, okay, I understand at least like

25    what stage the case was at when that filing got made, and I

23

1    understand, you know, generally speaking what kind of filing

2    this is, even if I don't know anything about the specifics

3    being argued.

4              But you know, you can put in a short letter on

5    this.  I think you understand where I'm coming from, and I

6    have suggested that I am (indiscernible) where it is you're

7    coming from, and we can take that -- we can take those next

8    steps at that time.

9              MR. HAGGANS:  Understood, Your Honor.  Does the

10   Court want to give us a date for that filing?  The order is

11   -- has --

12             THE COURT:  Sorry, go ahead.

13             MR. HAGGANS:  I'm sorry, Your Honor.  I was just

14   noting the order directs us to complete those steps, I

15   believe within 14 days.

16             THE COURT:  Yeah.  I mean, that's -- how about

17   Monday for the consideration letter?

18             MR. HAGGANS:  Understood.  Thank you, Your Honor.

19             THE COURT:  Okay.  All right.  Mr. Carman,

20   anything else from the defense side?

21             MR. CARMAN:  No, Your Honor.

22             THE COURT:  All right.  Thank you, everybody.  We

23   will reconvene on Thursday afternoon.

24             MR. HAGGANS:  Thank you, Your Honor.  Have a good

25   afternoon.

1            THE COURT:  And with that, we're adjourned.

2            MR. CARMAN:  Thank you.

3        (Proceedings concluded)

4            I, CHRISTINE FIORE, court-approved transcriber and

5    certified electronic reporter and transcriber, certify that

6    the foregoing is a correct transcript from the official

7    electronic sound recording of the proceedings in the above-

8    entitled matter.

9

10

11    _____        August 16, 2022

12    Christine Fiore, CERT

13        Transcriber

14

15

16

17

18

19

20

21

22

23

24

25